**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**

**DEBORAH A. GARRED,**
    Plaintiff,

v.                                                   Case No:   5:08cv155/RS/MD

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**
    Defendant.

_____

## REPORT AND RECOMMENDATION

This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Rules 72.1(A), 72.2(D) and 72.3 of the local rules of this court relating to review of administrative determinations under the Social Security Act and related statutes. It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying claimant Garred's application for disability insurance benefits under Title II of the Act.

Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

## PROCEDURAL HISTORY

Plaintiff, Deborah Garred, filed an application for benefits claiming an onset of disability as of August 2, 2002.  The application was denied initially and on reconsideration, and Ms. Garred requested a hearing before an administrative law judge (ALJ).  A hearing was held on November 16, 2006 at which Ms. Garred was represented by counsel and testified.  A vocational expert also testified.  The ALJ entered an unfavorable decision (tr. 22-29) and Ms. Garred requested review by the Appeals Council without submitting additional evidence.  The Appeals Council declined review (tr. 8-10).  The Commissioner has therefore made a final decision, and the matter is subject to review in this court.  *Ingram v. Comm'r of Soc. Sec. Admin*, 496 F.3d 1253, 1262 (11th Cir. 2007); *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998).  This timely appeal followed.

## FINDINGS OF THE ALJ

Relative to the issues raised in this appeal, the ALJ found that claimant had the severe impairment of rheumatoid arthritis, but that she did not have an impairment or combination of impairments that met or equaled one of the impairments listed in 20 C. F. R. Part 404, Subpart P; that she could do sedentary work with limitations not relevant here; that she could not perform her prior relevant work as an executive administrative secretary or billing supervisor but could work as a service dispatcher, information clerk, or security clerk, jobs which existed in large numbers in the economy;  and that she was not under a disability as defined in the Act.

## STANDARD OF REVIEW

In Social Security appeals, this court must review de novo the legal principles upon which the Commissioner's decision is based.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir.

1986)).  There is no presumption that the Commissioner followed the appropriate legal standards in deciding a claim for benefits, or that the legal conclusions reached were valid.  *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996); *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002).  Failure to either apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.  *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

The court must also determine whether the ALJ's decision is supported by substantial evidence.  *Moore*, 405 F.3d at 1211 (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)).  Even if the proof preponderates against the Commissioner's decision, if supported by substantial evidence, it must be affirmed.  *Ingram*, 496 F.3d at 1260; *Miles*, 84 F.3d at 1400.  Substantial evidence is more than a scintilla but less than a preponderance, and encompasses such relevant evidence as a reasonable person would accept as adequate to support a conclusion.  *Moore*, 405 F.3d at 1211 (citation omitted).  In determining whether substantial evidence exists, the court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Secretary's decision.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). This limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence.  *Moore*, 405 F.3d at 1211 (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  Findings of fact of the Commissioner that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g); *Ingram*, 496 F.3d at 1260.

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that

the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

The social security regulations establish a five-step evaluation process to analyze claims for both SSI and disability insurance benefits.  *See Moore,* 405 F.3d at 1211;  20 C.F.R. § 416.912 (2005) (five-step determination for SSI); 20 C.F.R. § 404.1520 (2005) (five-step determination for DIB).  A finding of disability or no disability at any step renders further evaluation unnecessary.  The steps are:

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairment?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent any other work?

These regulations place a very heavy burden on the claimant to demonstrate both a qualifying impairment or disability and an inability to perform past relevant work. *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir.1985)).  If the claimant establishes such an impairment, the burden shifts to the Commissioner at step 5 to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.  *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *Allen v. Bowen,* 816 F.2d 600, 601 (11th Cir. 1987).  If the Commissioner carries this burden, claimant must prove that she cannot perform the work suggested by the Commissioner.  *Doughty,* 245 F.3d at 1278 n.2; *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

**PLAINTIFF'S MEDICAL HISTORY**

Ms. Garred was diagnosed with rheumatoid arthritis in April 2001 (tr. 166), sixteen months before her August 1, 2002 claimed onset date. Her treating physician, Hulon Crayton, M.A., a rheumatologist, started her on Remicade infusions, and in June 2001 she reported that the first infusion had given her complete pain relief, and that she felt better than she had in years. On examination there was no synovitis (tr. 165). By December 2001, Ms. Garred reported that she had discontinued all of her medications, except for Remicade, five months before. She reported doing well with no joint, pain, swelling, or stiffness and Dr. Crayton noted that the rheumatoid arthritis was in remission (tr. 164).

Ms. Garred had gastric bypass surgery in June 2002 so her Remicade infusion was delayed for two weeks. An infusion in July 2002 provided no relief but after a September 2002 infusion she reported being pain free. On September 23, 2002, Ms. Garred told Dr. Crayton she had no symptoms, and examination disclosed no synovitis (tr. 163). Her condition changed little over the next several months, although she reported swelling in her right wrist and left foot (tr. 160-63). In December 2002 she had synovitis in her right wrist and mild swelling in her left knee. She was given a wrist injection and was told to discontinue methotrexate since she was attempting to get pregnant (tr. 158-59).

Ms. Garred received regular Remicade infusions from January through early May, 2003, and reported that she was doing extremely well. She was even doing housework although she did experience some pain in her right wrist, and was given an injection (tr. 154-57). On May 13, 2003 she reported increasing pain. She had not been taking methotrexate for two months because she was trying to get pregnant. Examination disclosed 1+ synovitis of the right wrist with tenderness over the left tarsometatarsal joints (tr. 153). A week later she reported that she was on her second day of Medrol and was feeling much better, but had persistent swelling of the posterior left knee and tenderness over the anterior lateral aspect of her foot.

Dr. Crayton found a Baker's cyst on the back of her left knee and some mild synovitis over her left tarsometatarsal joint (tr. 152).  On May 28, 2003, she was doing well, and on June 11, 2003, reported that she was having a flare up with pain and swelling in her hands, fingers, knees, and feet.  Examination disclosed mild synovitis in her hands (tr. 150).  A month later she received her regular Remicade infusion without adverse effects (tr. 149).  As of November 11, 2003, Ms. Garred had no active synovitis (tr. 147).  On January 12, 2004, Dr. Crayton noted that the monthly Remicade infusions were working "quite well," and although Ms. Garred reported that she did not get pain relief from Prednisone until mid-afternoon, she had no active synovitis (tr. 146).

On February 25, 2004 Ms. Garred was seen by David Maxwell, M.D., an internist who specialized in rheumatology. She told Dr. Maxwell that she was recently married and had relocated to southeastern Virginia. She stated that the stress and work involved with the move caused a flare-up of pain in her hands, wrists, and feet. She was unemployed, but was looking for employment. Examination revealed a slightly antalgic gait favoring her right foot.  Her fist formation was 100 percent; grip strength was 49 pounds with the right hand and 27 pounds with the left hand; flexion and extension in her right wrist was at 60 degrees and in the left wrist at 40 degrees; there was 2+ synovitis in the left wrist, trace synovitis in the right wrist, and synovitis in the right elbow with 30 degree contracture; there was 1+ synovitis in her right ankle and trace synovitis in her left ankle, and there was no effusion or tenderness in her knees and no limitation of motion in her MCPs.  Dr. Maxwell diagnosed rheumatoid arthritis (tr. 187-88).  A month later, Dr. Maxwell gave Ms. Garred an Enbrel shot (tr. 183).

On follow-up with Dr. Maxwell on April 23, 2004, grip strength was zero and the right wrist showed trace synovitis and good fist formation and grip strength. She was given a Depo-Medrol injection in her left wrist (tr. 181, 184).  Ms. Garred returned on May 25, 2004, and reported a good response from her left wrist injection. She had

some limitation in the range of motion in her right elbow.  She also reported waking up early in the morning and not being able to return to bed for several hours.  She was not physically active and wanted to work out with weights. There was trace synovitis in her left wrist, with flexion and extension at 30 degrees. There was warm synovitis in the right elbow with 10 degree contracture. She had a normal range of motion in her ankles. Dr. Maxwell diagnosed insomnia and rheumatoid arthritis, still slightly active in the right elbow, but with definite response to Enbrel.  She was given a Depo-Medrol injection in her right elbow (tr. 180).  Ms. Garred returned to Dr. Maxwell on July 6, 2004, and reported a flare up in her wrists and left elbow with increased fatigue.  There was warm synovitis in both wrists.  Her fist formation was 100 percent, but her grip strength was reduced. She had a limited range of motion on her left wrist and 10-degree contracture of the left elbow. The right elbow was normal (tr. 179).

On July 26, 2004, Ms. Garred complained of severe pain in her peripheral joints.  Examination showed synovitis in her wrists, with 10 degrees of flexion and extension in her left wrist. Her knees were crepitant, but cool.  She was given a Depo-Medrol injection in her left wrist (tr. 178).  On August 5, 2004 there was warm synovitis of the left elbow with 30 degree contracture and warm synovitis in the right wrist (tr. 177).  Ms. Garred returned to Dr. Maxwell's office on September 22, 2004, and reported a two week history of left elbow pain.  There was contracture of 30 degrees in the left elbow with warm synovitis; full abduction in her shoulder; trace synovitis at the wrists and MCPs; fist formation was complete and her ankles were freely mobile.  Ms. Garred was given a Depo-Medrol injection in her elbow (tr. 176).

Nine months later, on June 27, 2005, Ms. Garred returned to Dr. Crayton and reported that she was 22 weeks pregnant. She had no joint symptoms and no active synovitis (tr. 209).  She returned on September 1, 2005, and reported an arthritis flare (tr. 208).  On November 3, 2005, she reported that she was starting to have some trouble with swelling in her legs and left wrist.  There was synovitis of the left wrist

and lower extremity edema.  Dr. Crayton prescribed Enbrel and recommended that Ms. Garred begin tapering down her Prednisone use (tr. 206).  On December 5, 2005, she reported difficulty with the decreased dose of Prednisone, with pain in her left wrist and left foot. Dr. Crayton recommended that she continue tapering off of Prednisone (tr. 205). An MRI taken the next day showed severe deformity of the left wrist compatible with the diagnosis of rheumatoid arthritis (tr. 215).

On January 5, 2006, Ms. Garred returned to Dr. Williams and reported that she hurt all the time. She had complete motion in her cervical spine with no limitation. Her elbow motion was somewhat limited with 15 to 120 on the right and 0 to 140 on the left and grip strength was 32 pounds on the right and 15 pounds on the left. An x-ray of her wrists showed some mild osteopenia, but suitable joint preservation. Dr. Williams recommended that Ms. Garred consider arthroscopy of her wrist (tr. 213, 214, 220, 222).  On March 29, 2006 she reported difficulty with her left wrist. There was synovitis in the left wrist (tr. 204). On May 3, 2006 there was mild synovitis (tr. 203).  on May 9, 2006, grip strength was 25 pounds on the right and 7 pounds on the left.  Range of motion was 50 degrees on the right and 30 degrees on the left and there was a 10 to 15 degree lag at the right elbow.  Dr. Williams recommended a left wrist arthroscopy with a synovectomy.  On June 30, 2006, Ms. Garred called Dr. Williams and cancelled the surgery due to a family emergency (tr. 211, 218).

Ms. Garred returned to Dr. Crayton on July 19, 2006 complaining of pain in her feet. She was reluctant to have surgery because she had a baby.  Examination disclosed plantar fascitis, posterior tibial tendinitis, and rheumatoid arthritis with auto effusion (tr. 202).  On September 5, 2006 she complained of pain in her hips. There was tenderness bilaterally over the trochanteric bursae (tr. 200). On October 25, 2006, Dr. Crayton completed a form for Ms. Garred and stated that she met Listing 14.09 but left the medical basis for his conclusion blank (tr. 199).  He later resubmitted the same form.  For his medical findings he copied from the definition of Listing 14.09A (tr. 225) as follows:

History of joint pain, swelling, and tenderness, and signs on current physical examination of joint inflammation or deformity in two or more major joints resulting in the inability to ambulate effectively or inability to perform fine and gross movements effectively, as defined in 14.00B6b and 1.00B2b and B2c.

On October 31, 2006, Ms. Garred complained of fatigue, but stated that she was not having a lot of pain. She had no synovitis. Dr. Crayton opined that shifting Ms. Garred's Prednisone doses could improve her fatigue (tr. 210).

## DISCUSSION

Ms. Garred argues that the ALJ erred in improperly rejecting Dr. Crayton's opinion, in finding her not credible and not considering her complaints of fatigue, and in finding that she could do semi-skilled work, and she argues that she was disabled from her onset date. The Commissioner argues that the ALJ's findings were supported by substantial evidence and must, therefore, be sustained. The issue thus presented is whether the ALJ's decision that Ms. Garred was not disabled, in light of her physical condition, age, education, work experience, and residual functional capacity, is supported by substantial evidence in the record.

1. Dr. Crayton's opinion.

Ms. Garred first contends that the ALJ's rejection of Dr. Crayton's opinion was not supported by substantial record evidence. Absent good cause, the opinion of a claimant's treating physician must be accorded considerable or substantial weight by the Commissioner. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-1241 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Broughton v. Heckler*, 776 F.2d 960, 960-961 (11th Cir. 1985); *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986). "Good cause" exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own

medical records.  *Phillips,* 357 F.3d at 1241; see also *Lewis*, 125 F.3d at 1440 (citing cases).

If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  See *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnor v. Bowen,* 816 F.2d 578, 582 (11th Cir. 1987).  When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical impairments at issue; and (6) other factors which tend to support or contradict the opinion.  20 C.F.R. 404.1527(d).

The opinion of a non-examining physician is entitled to little weight, and, if contrary to the opinion of a treating physician, is not good cause for disregarding the opinion of the treating physician, whose opinion generally carries greater weight. *See* 20 C. F. R. § 404.1527(d)(1);  *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985); *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *Hurley v. Barnhart*, 385 F.Supp.2d 1245, 1255 (M.D.Fla. 2005).   However, a brief and conclusory statement that is not supported by medical findings, even if made by a treating physician, is not persuasive evidence of disability.  *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987); *Warncke v. Harris*, 619 F.2d 412, 417 (5th Cir. 1980).

"When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Phillips*, 352 F.3d at 1241.    Failure to do so is

reversible error. *Lewis*, 125 F.3d at 1440 (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986));[1] *see also Nyberg v. Commissioner of Social Security*, 179 Fed.Appx. 589, 591 (11th Cir. 2006) (Table, text in WESTLAW)(also citing *MacGregor*).

Ms. Garred argues that the ALJ rejected Dr. Crayton's opinion for only one reason - that only one joint was effected. That is incorrect. The ALJ noted that:

> Little weight is given to the opinions of Dr. Crayton . . . that the claimant's rheumatoid arthritis meets Medical Listing 14.09 because the medical evidence shows the claimant has some deformity in only her left non-dominant wrist. As noted above, the medical evidence of record shows the claimant has only occasional flare-ups and she is able to care for her infant daughter.

(Tr. 27). Ms. Garred contends that while only the left wrist was *deformed*, both wrists were affected by the rheumatoid arthritis, as were her knees, feet, elbows, finger and toe joints, and hips, and that her flare-ups were more than just occasional (doc. 19, p. 12). It is true that Ms. Garred complained of problems in more than her left wrist, but she has not refuted the ALJ's second reason - that there were only occasional flare-ups and Ms. Garred could care for her daughter.

Whether the flare-ups were only occasional, and whether Ms. Garred had the ability to care for her daughter, are factors that must be considered in the context of the regulations. Listing 14.09 requires more than an effect on two or more joints. It requires "[1] joint inflammation *or* [2] deformity in two or more major joints [3] *resulting in* [A] *the inability to ambulate effectively or* [B] *inability to perform fine and gross movements effectively, as defined in 14.00B6b and 1.00B2b and B2c.*" (Emphasis added). Thus, more than deformity or inflammation is required. If either of those requirements are met, they must result in something more severe - in walking or upper body function - than the medical record shows that Ms. Garred

---

[1] *MacGregor* further held that "Where the [Commissioner] has ignored or failed properly to refute a treating physician's testimony, we hold as a matter of law that he has accepted it as true." 786 F.2d at 1053.

had.  First, section 14.00B6b requires that the inability to ambulate and inability to perform fine and gross movements effectively must have lasted, or be expected to last, for at least twelve months.  Second, section 1.00B2b requires "extreme limitation of the ability to walk."  The only record of difficulty in ambulation was Dr. Williams' February 25, 2004 note of slight limp favoring the right foot (tr. 187).  There was never an indication that Ms. Garred needed assistance walking.  She has therefore failed to meet that requirement.

Third, section 1.00B2c requires "an extreme loss of function of both upper extremities, *i.e.,* an impairment that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities."  Examples include "the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a cabinet at or above the waist level."

Regardless of Dr. Crayton's opinion, the medical evidence did not show that Ms. Garred met these criteria.  As the ALJ noted, she had only occasional flare-ups, and she could care for her daughter.  The record showed she had a slight limp, some pain, swelling and associated symptoms, but nothing so severe as to prevent her from walking without assistance or otherwise caring for herself.  Therefore, the ALJ's determination was supported by substantial record evidence, and Ms. Garred is not entitled to reversal on this ground.

2. <u>Subjective complaints of pain.</u>

Ms. Garred next contends that the ALJ erred in finding her subjective complaints of pain not credible, and in rejecting her complaints of fatigue.  As this court is well aware, pain is treated by the Regulations as a symptom of disability.  Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, ". . . unless medical signs or findings show that there is a medical condition that could be reasonably expected

to produce these symptoms." *Accord* 20 C.F.R. § 416.929. The Eleventh Circuit has articulated the three-part pain standard, sometimes referred to as the *Hand*[2] test, as follows:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *Ogranaja v. Commissioner of Social Security*, 186 Fed.Appx. 848, 2006 WL 1526062, *3+ (11th Cir. 2006) (quoting *Wilson*) (Table, text in WESTLAW); *Elam v. Railroad Retirement Bd.*, 921 F.2d 1210, 1216 (11th Cir. 1991).

The Eleventh Circuit has also approved an ALJ's reference to and application of the standard set out in 20 C.F.R. § 404.1529, because that regulation "contains the same language regarding the subjective pain testimony that this court interpreted when initially establishing its three-part standard." *Wilson, supra*, 284 F.3d at 1226. Thus, failure to cite to an Eleventh Circuit standard is not reversible error so long as the ALJ applies the appropriate regulation.

But "[w]hile both the Regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." *Elam*, 921 F.2d at 1215. The Eleventh Circuit has held that "pain alone can be disabling, even when its existence is unsupported by objective evidence." *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)(citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)); *Walker v. Bowen*, 826 F.2d 996, 1003 (11th Cir. 1987); *Hurley v. Barnhart*, 385 F.Supp.2d 1245, 1259 (M.D.Fla. 2005). However, the presence or absence of

---

[2] *Hand v. Bowen*, 793 F.2d 275, 276 (11th Cir.1986) (the case originally adopting the three-part pain standard).

evidence to support symptoms of the severity claimed is a factor that can be considered. *Marbury*, 957 at 839-840; *Tieniber v. Heckler,* 720 F.2d 1251, 1253 (11th Cir. 1983).

Finally, if the Commissioner refuses to credit subjective testimony of the plaintiff concerning pain he must do so explicitly and give reasons for that decision. *MacGregor v. Bowen*, 786 F.2d at 1054. Where he fails to do so, the Eleventh Circuit has stated that it would hold as a matter of law that the testimony is accepted as true. *Holt v. Sullivan*, 921 F.2d at 1223; *MacGregor v. Bowen*, 786 F.2d at 1054. Although the Eleventh Circuit does not require an explicit finding as to a claimant's credibility, the implication must be obvious to the reviewing court. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable the reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole. *Dyer*, 395 F.3d at 1210 (11th Cir. 2005) (internal quotations and citations omitted). And of course, the reasons articulated for disregarding the plaintiff's subjective pain testimony must be based upon substantial evidence. *Wilson*, 284 F.3d at 1225-1226; *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991); *Hurley*, 385 F.Supp.2d at 1259.

Underlying the *Hand* standard is the need for a credibility determination concerning a plaintiff's complaints of pain. Those complaints are, after all, subjective. "[T]he ascertainment of the existence of an actual disability depend[s] on determining the truth and reliability of [a claimant's] complaints of subjective pain." *Scharlow v. Schweiker*, 655 F.2d 645, 649 (5th Cir. 1981) (holding that the ALJ must resolve "the crucial subsidiary fact of the truthfulness of subjective symptoms and complaints").[3] People with objectively identical conditions can experience

---

[3] Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. Pritchard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

*Case No: 5:08cv155/RS/MD*

significantly different levels of pain, and pain is more readily treated in some than in others. "Reasonable minds may differ as to whether objective medical impairments could reasonably be expected to produce [the claimed] pain. This determination is a question of fact which, like all factual findings by the [Commissioner], is subject only to limited review in the courts . . . ." *Hand, supra,* at 1548-49. It is within the ALJ's "realm of judging" to determine whether "the quantum of pain [a claimant] allege[s] [is] credible when considered in the light of other evidence." *Arnold v. Heckler*, 732 F.2d 881, 884 (11th Cir. 1984). Thus, a physician may be told by a patient that he or she is in pain, and the physician may believe it, but the ALJ is not bound by that. The evidence as a whole, including the existence of corroborating objective proof or the lack thereof, and not just a physician's belief or the plaintiff's claims, is the basis for the ALJ's credibility determination.

Ms. Garred argues that the ALJ did not credit her flare-ups, calling them "only" occasional. She argues that there were eight flare-ups between November 2002 and November 2005 (doc. 19, pp. 12-13). She is correct as to the number and time period, but she has not given this court any authority, nor has the court found any, that says a flare-up every four to five months is more than occasional. Ms. Garred testified that her activities are significantly impaired - that she essentially sits at home - but the ALJ was not required to credit this. The medical record as a whole showed that Ms. Garred has rheumatoid arthritis, and that she has occasional flare-ups, but the medical record does not support her claims concerning the degree of her limitations. As to her complaints of fatigue, that condition was mentioned first in July 2004 (tr. 179) and again in October 2006 (tr. 210). There were other instances in which she mentioned not sleeping well, but the record contained nothing specific about generalized fatigue (tr. 146, 180, 200). It was within the ALJ's "realm of judging" to find that Ms. Garred's subjective complaints of pain and fatigue were not legally disabling, and she is not entitled to reversal on this ground.

### 3. Semi-skilled work.

For her last ground for reversal Ms. Garred asserts that the ALJ erred in finding that she could do semi-skilled work. She argues that the vocational expert was given no basis for finding that she could perform the duties of service dispatcher, information clerk, or security clerk, but that this was error because the vocational expert "provided no testimony regarding skills acquired in past work, or the transferability of such skills to the named new jobs." (Doc. 19, p. 15). This argument fails. Ms. Garred had prior relevant work as an executive administrative secretary and billing supervisor (tr. 27) and has a degree in psychology (tr. 237). The vocational expert testified that he had reviewed Ms. Garred's prior relevant work, and that her prior jobs had been skilled. The vocational expert was asked to assume those jobs and skills, and the ability to read, write and use numbers, along with the physical limitation the ALJ ultimately found (tr. 261-62). The vocational expert opined that based on that history and limitations, Ms. Garred could perform the jobs of service dispatcher, information clerk, or security clerk, which are semi-skilled (tr. 263). Ms. Garred has not given the court any authority to support her position other than two Social Security Rulings, SSR 82-41 and 83-10, which deal with the application of the medical/vocational guidelines where no vocational expert testimony is presented. That was not the case here. The vocational expert was aware of Ms. Garred's education and work experience, and based on this knowledge and on his own expertise, opined that Ms. Garred could do the aforementioned jobs. It was not necessary to make any findings on the transferability of skills from one highly skilled administrative job to a semi-skilled administrative job. Ms. Garred has not shown error on this issue, and is not entitled to reversal.

Accordingly, it is respectfully RECOMMENDED that the Commissioner's decision be AFFIRMED, that judgment be entered in favor of the defendant, and that the clerk be directed to close the file.

At Pensacola, Florida this 26th day of June 2009.

/s/ *Miles Davis*
**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO PARTIES**

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  See 28 U.S.C. § 636;** *United States v. Roberts*, **858 F.2d 698, 701 (11th Cir. 1988).**